IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| ACTIVE WEAR, INC., | ) |
|       Appellant, | ) Case No. 4:05-CV-00033 |
| v. | ) **MEMORANDUM OPINION** |
| PARKDALE MILLS, INC., | ) |
|       Appellee. | ) By: Jackson L. Kiser |
| | )      Senior United States District Judge |

Before me is an *Appeal* [1] from the United States Bankruptcy Court for the Western District of Virginia ("Bankruptcy Court") by Appellant Active Wear, Inc. A hearing was held before this Court on September 23, 2005. For the reasons stated below, I hereby **AFFIRM** the *Judgment* of the Bankruptcy Court.

I. **STATEMENT OF FACTS**

Appellant Active Wear, Inc. ("Active Wear") was a Georgia Corporation with its principal place of business in Martinsville, Virginia. Its primary business activity was turning yarn into cloth. During its period of operation, Active Wear purchased substantial quantities of yarn on open account from Appellee Parkdale Mills, Inc. ("Parkdale"). When Active Wear ceased operations on or about February 13, 2004, it had unused yarn in its possession which it had purchased from Parkdale. On February 13, 2004, the balance Active Wear owed on its account with Parkdale was at least $2 million.

Active Wear made Parkdale aware of its cessation of operations and Parkdale made a reclamation claim pursuant to the Uniform Commercial Code. The value of the yarn subject to

the reclamation claim was determined to be $11,428.88. Parkdale picked up the unused yarn it had sold Active Wear and Active Wear charged Parkdale $134,849.50 against the outstanding indebtedness for the returned yarn.

The parties stipulated that Parkdale had sold or would sell the returned yarn for between $99,000 and $105,000, which included the $11,428.88 that was attributable to the yarn subject to the reclamation claim. In its preference action, Active Wear did not seek to recover the value of the yarn subject to the reclamation claim and does not dispute the finding of $11,488.25 as being the value of the yarn subject to the reclamation claim.

At trial before the Bankruptcy Court, Active Wear presented only one witness, its Chief Financial Officer and its Liquidation Agent in the bankruptcy case Paul Huckfeldt. Huckfeldt performed a preliminary liquidation analysis prior to trial. Huckfeldt testified that he found Active Wear's entire inventory of yarn to have a liquidation value between $25,000 and $50,000. In addition, Active Wear circulated another memorandum to "All Creditors," that stated:

> Since February 13, the Company has returned in excess of 100,000 pounds of inventory to Parkdale. Parkdale has not yet issued credits. In liquidation, the value of the yarn inventory would be insignificant.

On May 5, 2004, within 90 days of the yarn being reclaimed by Parkdale, an involuntary Chapter 7 bankruptcy was filed against Active Wear. The involuntary petition was not contested and an *Order for Relief* was entered on May 25, 2004. Active Wear moved to convert the case to a Chapter 11 bankruptcy, and an *Order* converting the case and appointing Active Wear as Debtor-in-Possession was entered on May 25, 2004.

As Debtor-in-Possession, Active Wear brought an adversary proceeding to have the transfer of the yarn to Parkdale avoided pursuant to 11 U.S.C. §547, and to recover the value of

the property transferred pursuant to 11 U.S.C. §550.

## II.      PROCEDURAL BACKGROUND

The Bankruptcy Court entered an Order in this case on May 13, 2005.  Active Wear filed its *Notice of Appeal* with this Court on June 24, 2005, and filed its *Appeal* on July 8, 2005.  In its final *Order* issued after an adversary proceeding, the Bankruptcy Court held that Active Wear could recover, as a preferential transfer, the liquidation value of certain yarn returned to Parkdale.  The Bankruptcy Court further held that Parkdale must pay the liquidation value of the returned yarn to Active Wear's bankruptcy estate.  The Bankruptcy Court found the liquidation value of the yarn to be $27,459.00.  In its Appeal, Active Wear claims that the Bankruptcy Court erred in not assigning the yarn its fair market value.  According to Active Wear, the yarn's fair market value is that price which Parkdale could realize from re-selling the yarn after Parkdale recovered the yarn from Active Wear.

This Court has appellate jurisdiction over this case pursuant to 28 U.S.C. §158 and the Federal Rules of Bankruptcy Procedure Rule 8001.  "Findings of fact by the bankruptcy court in proceedings within its full jurisdiction are reviewable only for clear error and legal questions are subject to de novo review."  *Canal Corporation v. Finnman* (In Re Johnson), 960 F.2d 396, 399 (4th Cir. 1992).

## III.     Discussion

The sole issue in this appeal is whether the Bankruptcy Court properly held that Active Wear should be given credit for the liquidation value of the yarn it returned in an avoided transfer to Parkdale.  Active Wear argues that it deserves credit for the fair market value of the yarn that it returned to Parkdale; that is, the value that Parkdale could realize by re-selling the

yarn that Active Wear returned to Parkdale.  I disagree.  I hold that the Bankruptcy Court ruled properly in giving Active Wear credit for the liquidation value of the yarn in this case.

Both parties rely on the Fourth Circuit's opinion in *Virginia National Bank v. Woodson* (*In re Decker*), 329 F.2d 836, 840 (4th Cir. 1964).   This 1964 opinion was based on the *Bankruptcy Act* which was replaced by the *Bankruptcy Code* on November 6, 1978.  However, *Decker* is still good law because it has not been overturned by the Fourth Circuit, its holding is consistent with the *Bankruptcy Code*, and neither party to this *Appeal* has attempted to discredit the authority of *Decker*.  Furthermore, *Decker* has been cited positively by various Federal Appellate Courts since the enactment of the *Bankruptcy Code*.  See, *Texas American Bancshares, Inc. v. Clarke*, 954 F.2d 329, 339 (5th Cir. 1992)*;  In re Royal Golf Products Corp.*, 908 F.2d 91, 94 (6th Cir. 1990)*; Mandross v. Peoples Banking Co.* (*In re Hartley*), 825 F.2d 1067, 1071 (6th Cir. 1987); *Brown v. First National Bank of Little Rock, Arkansas*, 748 F.2d 490, 491 (8th Cir. 1984); *Texaco, Inc. v. Liberty National Bank & Trust Co. of Oklahoma City*, 464 F.2d 389, 393 (10th Cir. 1972).

In *Decker*, the Fourth Circuit held that a transfer made before the debtor files for bankruptcy may be avoided if it depletes the estate of the bankrupt.  Furthermore, the *Decker* opinion held that the value which must be returned to the debtor is the amount that was depleted from the bankrupt's estate.  On this point, the *Decker* opinion stated:

> The fact that there was a preference which involved a depletion of the bankrupt's estate to some undisclosed extent does not necessarily require that the preferred creditor shall return all that he has received unless the amount of depletion is at least equal to the amount so received. The test is not what the creditor receives but what the bankrupt's estate has lost. It is the diminution of the bankrupt's estate, not the unequal payment to creditors, which is the evil sought to be remedied by the avoidance of a preferential transfer. 329 F.2d at 840.

-4-

While *Decker* is not based on the *Bankruptcy Code,* as stated just above, the *Code* gives the same guidance as the Fourth Circuit did in *Decker*: 11 U.S.C. §547, allows a transfer to be avoided if it depletes the bankrupt's estate, and 11 U.S.C. §550 allows the "value" of the transfer to be returned to the bankrupt's estate.

The *Bankruptcy Code*, as suggested by Active Wear, does require a Bankruptcy Court to use 11 U.S.C. §547 to determine if a transfer is voidable. If the Bankruptcy Court determines that the transfer should be avoided, then the Bankruptcy Court must employ 11 U.S.C. §550 to determine the value that must be returned to the estate of the bankrupt. Though the Bankruptcy Court in this case cites only 11 U.S.C. §547 to determine both that the transfer should be avoided and the value that should be returned, without citing 11 U.S.C. §550 as claimed by Active Wear, the Bankruptcy Court was still correct in its final conclusion. Not mentioning 11 U.S.C. §550 does not amount to clear error because the Bankruptcy Court still came to the correct conclusion.

Active Wear claims that the Bankruptcy Court erred in not citing 11 U.S.C. §550 because the term "value" in that portion of the statute refers to "fair market value," as opposed to the "liquidation value" employed by the Bankruptcy Court. Active Wear may be correct that the term "value," in 11 U.S.C. §550 refers to "fair market value;" however, the appellant's assertion that "fair market value" is determined by the value of the property to the creditor is misplaced. Instead, "fair market value" refers to the value that the debtor/bankrupt could receive for the property in a liquidation sale. This definition of "fair market value" is consistent with both the Fourth Circuit in *Decker*, and also with the authority cited by Active Wear.

In *Decker*, the Fourth Circuit stated that the "value" that should be returned to the

bankrupt is the value that the transfer depleted from the bankrupt's estate. In this case, had Active Wear kept the yarn as part of its estate, the yarn's value would have been what Active Wear could have realized for it at a liquidation sale. Therefore, when the yarn was recovered by Parkdale, Active Wear's estate was depleted of that value which Active Wear could have realized for the yarn at a liquidation sale.

In its brief, Active Wear cites *Collier on Bankruptcy* to argue that the term "value," as used in 11 U.S.C. §550, refers to "fair market value." *Collier on Bankruptcy* does make this assertion and cites Federal District Court cases that have expressed as much. First, the cases cited by *Collier* are not controlling but merely advisory because they are Federal District Court opinions. Furthermore, both *Collier* and those cases seem to say that "fair market value" must be determined from the vantage point of the debtor, i.e. what is the fair market value that the debtor's estate could receive for the yarn in its own liquidation sale.

The first case cited by *Collier* and the case primarily relied upon by Active Wear in the hearing before this Court is *Slutsky v. Michel Tire Co.* (*In re Vann*) 26 B.R. 148 (Bankr. S.D. Ohio 1983). In *Slutsky*, the creditor repossessed tires from the debtor when the debtor failed to pay for them. 26 B.R.148. The debtor then sought to have the transfer avoided, and the value of the tires returned to its estate. *Id*. The Court concluded that it could not "order that defendant pay the plaintiff the value of the tires which were removed because there is no evidence of what that value is." *Id*. at 149. The Court did state that "the term value connotes fair market value;" however, the Court then stated that:

> "the record is entirely silent as to what that might be. All that we have is a figure for debtor's costs when he bought the tires, and a figure proffered by defendant of its costs. *Neither cost figure provides us with information as to what the [bankrupt's] trustee might obtain were he to offer the tires for sale*" (emphasis added).

-6-

The Court then concluded that the proper remedy was to order that the removed tires themselves be returned. It seems that the Court in *Slutsky* held that "value" in 11 U.S.C. §550 connotes "fair market value," and that this "fair market value" refers to the value that the bankrupt's trustee could realize in selling the property – presumably in a liquidation sale.

The second case cited by *Collier* is *Still v. Hudson*, (*In Re Hudson Printing & Lithographing Co.*), 28 B.R. 876 (Bankr. E.D. Tenn. 1983). *Hudson* was a complex case involving claims between a bankrupt corporation and George Hudson – a former stockholder, officer, director, and employee of the corporation. Mr. Hudson allegedly owed the corporation $80,000; the value of an automobile accounted for a small portion of this debt. For purposes of the instant case, *Hudson* involved the return of that automobile from Mr. Hudson to the corporation. The automobile was purchased by the company and allegedly fraudulently transferred by Mr. Hudson to himself shortly before the corporation filed for bankruptcy. In *Hudson*, the Court never expressly defined the term "value." Instead, the Court merely cited 11 U.S.C. §550(a) in ruling that Mr. Hudson had to return the equity value of the automobile to the corporation, i.e. the amount that the corporation had paid for the car while in Mr. Hudson's possession. *Hudson*, 28 B.R. 876, 881.

The *Hudson* opinion seems to give little guidance in the case at hand. First, the portion of *Hudson* that is applicable to the case at hand dealt with a fraudulent transfer. Second, the value of the car that the Court required Mr. Hudson to return makes up a small portion of the greater debt that the Court is requiring Mr. Hudson to return. Furthermore, the Court never made any findings about the value which it required Mr. Hudson to return to the corporation. Finally, there is no discussion about how the Court determined the value of the car; the Court

-7-

merely cited 11 U.S.C. §550(a) in ruling that Mr. Hudson had to return the equity value of the car to the corporation..

The third case relied upon by Active Wear, and by *Collier*, is *Federman v. Falcone* (*In re Nevada Implement Co.*), 22 B.R.105, 106-107 (Bankr. W.D. Mo. 1982). The Court in *Federman* allowed a trustee in bankruptcy to recover the "fair market value" of farm implements that had been transferred to a third party in a transfer that was later avoided by the Court. The Court in *Federman* determined that the difference between the wholesale price and the retail price is the "fair market value" that must be turned over to the bankrupt's estate. 22 B.R. at 107. Furthermore, the Court held that the "estate in bankruptcy is entitled to the fair market value of the debtor's legal or equitable interests as of the time of commencement of these title 11 proceedings." *Id.*

Following *Federman* in this case would not result in Active Wear being credited with the value that Parkdale could have realized from re-selling the returned yarn; that value would be the retail value. Instead, the value assigned to the returned farm implements in *Federman* most resembles the value that Active Wear could realize at a liquidation sale, i.e. a value somewhere between the wholesale value and the retail value of the yarn.

Case law and statutory law demand that the value which must be assigned to the yarn in this case is the fair market value that could be obtained for the yarn in a liquidation sale held by Active Wear. Furthermore, to give Active Wear credit for the fair market value that could be realized by Parkdale after the return of the yarn, would require giving Active Wear the benefit of Parkdale's expense in employing its expertise, time, good will, and advertising to re-sell the yarn to another of its customers. Such a result is not supported by case law, statutory law, or common

sense.

Therefore I hold that the most appropriate value to assign to the yarn that Active Wear returned to Parkdale is the value that Active Wear could have realized for the yarn in a liquidation sale. This was the value assigned to the yarn by the Bankruptcy Court. The Bankruptcy Court found this value to be $27,459.00. I find that the Bankruptcy Court did not make clear error in arriving at this figure, and I therefore affirm the holding of the Bankruptcy Court.

**IV.     Conclusion**

For the reasons stated above, an *Order* will be entered affirming the holding of the Bankruptcy Court in this case.

The clerk is directed to send a copy of this *Memorandum Opinion* and the accompanying *Order* to the Bankruptcy Court and to all counsel of record.

Entered this 4th day of October, 2005.

                                                       s/Jackson L. Kiser
                                                      Senior United States District Judge